**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Linda Sisto, et al., | No. CV-20-00202-PHX-ESW |
| Plaintiffs, | **ORDER** |
| v. | |
| United States of America, | |
| Defendant. | |

This is a medical negligence action brought pursuant to the Federal Tort Claims Act ("FTCA"). (Doc. 1). It arises from the death of San Carlos Apache tribal member, Tyrone Sisto, following treatment at a hospital operated by the San Carlos Apache Healthcare Corporation, Inc. ("SCAHC"). Mr. Sisto's mother and children ("Plaintiffs") allege that the attending emergency room physician, Dr. Rickey Gross, provided negligent care that resulted in Mr. Sisto's death. Plaintiffs sue the United States of America (the "Government"), asserting that Dr. Gross was acting within the course and scope of his employment with the SCAHC and the Government. (*Id.* at 3, ¶¶ 8, 9). Pending before the Court is the Government's "Motion to Dismiss for Lack of Subject Matter Jurisdiction" (Doc. 17). For the reasons explained herein, the Motion (Doc. 17) will be granted.

## I. LEGAL STANDARDS

"Federal Rule of Civil Procedure 12(b)(1) allows litigants to seek the dismissal of

an action from federal court for lack of subject matter jurisdiction." *Tosco Corp. v. Cmtys. for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001), *abrogated on other grounds by Hertz Corp. v. Friend*, 559 U.S. 77 (2010). A "[p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F.Supp.2d 9, 13-14 (D.D.C. 2001) (internal quotation marks and citation omitted). "When subject matter jurisdiction is challenged under Federal Rule of Procedure 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Tosco Corp.*, 236 F.3d at 499.

Because federal courts are courts of limited jurisdiction, a case presumably lies outside the jurisdiction of the federal courts unless proven otherwise. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). As subject matter jurisdiction involves a court's power to hear a case, it can never be forfeited or waived. *United States v. Cotton*, 535 U.S. 625, 630 (2002). Pursuant to the doctrine of sovereign immunity, "it is axiomatic that the United States may not be sued without its consent and the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). Courts strictly construe waivers of sovereign immunity. *See Tucson Airport Auth. v. Gen. Dynamics Corp.*, 136 F.3d 641, 644 (9th Cir. 1998).

Under the FTCA, the United States can be held liable for "personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). "The [FTCA] is a limited waiver of sovereign immunity, making the Federal Government liable to the same extent as a private party for certain torts of federal employees acting within the scope of their employment." *United States v. Orleans*, 425 U.S. 807, 813 (1976). Although "employees" of the government include officers and employees of federal agencies, "independent contractors" are not "employees." 28 U.S.C. §

2671. Therefore, the FTCA does not authorize suits based on the acts of independent contractors or their employees. *Orleans*, 425 U.S. at 814.

"[T]he critical test for distinguishing an agent from a contractor is the existence of federal authority to control and supervise the 'detailed physical performance' and 'day to day operations' of the contractor, and not whether the agency must comply with federal standards and regulations." *Carrillo v. United States*, 5 F.3d 1302, 1304 (9th Cir. 1993). "The circuit courts are unanimous in holding that a contract physician is not an employee of the government under the FTCA." *Id.*

## II.  DISCUSSION

### A.  Dr. Gross is an Independent Contractor for Purposes of the FTCA

It is undisputed that the SCAHC is a tribally operated entity under Title I of the Indian Self-Determination and Education Assistance Act and subject to a self-determination compact with the Indian Health Service, an agency within the United States Department of Health and Human Services.  (Doc. 17 at 2, ¶ 8; Doc. 20 at 3).  The parties agree that this means that the SCAHC is part of the United States Public Health Service for purposes of the FTCA.  (*Id.*).  The parties dispute whether Dr. Gross is a federal employee or an independent contractor with respect to the care he provided at the SCAHC emergency department.

In 2016, SCAHC entered into an Emergency Department Services Agreement (the "Agreement") with Tribal EM, PLLC ("T-EM").  (Doc. 17-1).  The Agreement states that SCAHC determined that it "required the services of a qualified person or entity to provide certain professional and administrative services" related to the operation of its emergency department and that SCAHC

> has determined that it should retain T-EM to provide the Services under the terms and conditions of this Agreement through physicians (each, a "T-EM Provider" and, collectively, the "T-EM Providers") . . . . each of whom is licensed and/or certified, as applicable, to provide professional medical services in one of the fifty States of the United States of America (the "State"), experienced in the

>specialized field of emergency medicine (the "Specialty"), members in good standing of SCAH's medical staff (the "Medical Staff"), and employed or otherwise engaged by or under contract with T-EM from time to time to provide the Services (as defined below) under this Agreement . . . .

(*Id.* at 1, ¶¶ B, D). The Agreement requires T-EM to "employ, contract with, or otherwise engage T-EM Providers to provide the Services under this Agreement." (*Id.* at 6, ¶ 2.5(a)). The Agreement further provides that T-EM

>is and shall at all times be an independent contractor with respect to SCAHC in the performance of its obligations under this Agreement. Nothing in this Agreement shall be construed to create an employer/employee, joint venture, lease, or landlord/tenant relationship between SCAHC and T-EM, any T-EM Provider, or any T-EM Agent. T-EM shall not, and shall ensure that each T-EM Provider and T-EM Agent does not, hold itself, himself or herself out as an officer, agent or employee of SCAHC or incur any contractual or financial obligation on behalf of SCAHC, without SCAHC's prior written consent.

(*Id.* at 11, ¶ 4.1).

Plaintiffs do not sufficiently dispute that Dr. Gross was employed by T-EM. (Doc. 17 at 3 ¶ 13; Doc. 20 at 5). As a T-EM Provider, the Agreement required T-EM to be solely responsible for paying Dr. Gross' compensation and benefits. (Doc. 17-1 at 11, ¶ 4.1). The Agreement required T-EM to ensure that each T-EM Provider complied with performance standards. (*Id.* at 10, ¶ 3.6). Pursuant to the Agreement, T-EM maintained professional liability insurance for the negligent acts and omissions of Dr. Gross as a T-EM Provider. (Doc. 17-2). The Court finds that neither the SCAHC nor the Government had sufficient control over Dr. Gross' practice of medicine to render Dr. Gross a federal employee. The Court thus concludes that Dr. Gross was an independent contractor.

The Court is not persuaded by Plaintiffs' argument in their Response (Doc. 20) that the following federal statutes and regulations "displace and supersede all variations of the federal independent-contractor defense to FTCA coverage" for Dr. Gross' alleged malpractice: 25 U.S.C. § 1680c(e)(1), 25 U.S.C. § 5304(j), 25 U.S.C. § 5321(d), 42

U.S.C. § 233(a), 25 C.F.R. § 900.189, 25 C.F.R. § 900.193, 25 C.F.R. § 199. (Doc. 20 at 12).

### B.  25 U.S.C. § 5321(d), 25 C.F.R. § 900.193, and 42 U.S.C. § 233(a)

Plaintiffs assert that Dr. Gross is considered a federal Public Health Service employee "under the joint operation of 42 U.S.C. § 233(a) and 25 U.S.C. § 5321(d)." (Doc. 20 at 7). As Plaintiffs explain (Doc. 20 at 3), 25 U.S.C. § 5321(d) provides that certain tribal organizations, such as the SCAHC, are "deemed to be part of the Public Health Service in the Department of Health and Human Services." *See Goss v. United States*, 353 F. Supp. 3d 878, 885 (D. Ariz. 2018) ("Tribal organizations and Indian contractors under an [Indian Self-Determination and Education Assistance Act of 1975] contract are *deemed* part of the [Public Health Service].") (emphasis in original).

25 U.S.C. § 5321(d) also provides that "an individual who provides health care services pursuant to a personal services contract" with tribal organizations like the SCAHC, are deemed employees of the Public Health Service while acting within the scope of their employment in carrying out the contract. 25 C.F.R. § 900.193 provides that FTCA "coverage extends to individual personal services contractors providing health services" in a tribal facility operating under a self-determination contract. 42 U.S.C. § 233(a) "makes the FTCA remedy against the United States 'exclusive of any other civil action or proceeding' for any personal injury caused by a [Public Health Service] officer or employee performing a medical or related function 'while acting within the scope of his office or employment.'" *Hui v. Castaneda*, 559 U.S. 799, 802 (2010).

Here, to support their argument that Dr. Gross entered into a "personal services contract" with SCAHC, Plaintiffs rely on the Letter of Acknowledgment that Dr. Gross signed on January 27, 2016. (Doc. 17-1 at 35). However, the Letter of Acknowledgment expressly states that Dr. Gross acknowledges that: "I have no employment, independent contractor or other contractual relationship with SCAHC, that my right to practice at SCAH as a T-EM Provider is derived solely through my employment or contractual relationship with T-EM." (*Id.*). The Court does not find that there was a "personal

services contract" between Dr. Gross and SCAHC. As Dr. Gross was not working under a personal services contract with SCAHC, the Government correctly asserts that 25 U.S.C. § 5321(d), 25 C.F.R. § 900.193, and 42 U.S.C. § 233(a) do not apply. (Doc. 21 at 3-6).

### C.  25 U.S.C. § 1680c(e)(1) and 25 C.F.R. § 900.199

In contending that the FTCA applies to Dr. Gross, Plaintiffs also rely on 25 U.S.C. § 1680c(e)(1) and 25 C.F.R. § 900.199. 25 U.S.C. § 1680c(e)(1) provides that

> Hospital privileges in health facilities operated and maintained by the Service or operated under a contract or compact pursuant to the Indian Self-Determination and Education Assistance Act (25 U.S.C. 450 et seq.) may be extended to non-Service health care practitioners who provide services to individuals described in subsection (a), (b), (c), or (d). Such non-Service health care practitioners may, as part of the privileging process, be designated as employees of the Federal Government for purposes of section 1346(b) and chapter 171 of Title 28 (relating to Federal tort claims) only with respect to acts or omissions which occur in the course of providing services to eligible individuals as a part of the conditions under which such hospital privileges are extended.

25 C.F.R. § 900.199 provides that "FTCA coverage extend[s] to health care practitioners to whom staff privileges have been extended in contractor health care facilities operated under a self-determination contract on the condition that such practitioner provide health services to [Indian Health Service] beneficiaries covered by FTCA."

The Court is persuaded by the Government's argument that "Dr. Gross was granted privileges because he was an employee of T-EM." (Doc. 21 at 8). The Court does not find the existence of a contract in which Dr. Gross agreed to perform services for Indian Health Service beneficiaries in exchange for hospital privileges. As a T-EM Provider, Dr. Gross obtained privileges at SCAHC pursuant to the Agreement between SCAHC and T-EM. The Court concludes that 25 U.S.C. § 1680c(e)(1) and 25 C.F.R. § 900.199 do not confer FTCA subject matter jurisdiction in this case.

**D. 25 U.S.C. § 5304(j), 25 U.S.C. § 5396(a), and 25 C.F.R. § 900.189**

In their Response (Doc. 20 at 12), Plaintiffs also cite 25 U.S.C. § 5304(j), 25 U.S.C. § 5396(a), and 25 C.F.R. § 900.189. None of these provisions confer subject matter jurisdiction. 25 U.S.C. § 5304(j) provides the statutory definition of "self-determination contract." 25 U.S.C. § 5396(a) provides that:

> All provisions of sections 5305(b), 5306, 5307, 5321(c) and (d), 5323, 5324(k) and (l), 5325(a) through (k), and 5332 of this title and section 314 of Public Law 101-512 (coverage under chapter 171 of Title 28, commonly known as the "Federal Tort Claims Act"), to the extent not in conflict with this subchapter, shall apply to compacts and funding agreements authorized by this subchapter.

Finally, 25 C.F.R. § 900.189 provides that FTCA coverage does not extend to subcontractors of self-determination contracts.

### III. CONCLUSION

Based on the foregoing, the Court finds that this action is barred by the independent-contractor exception to the FTCA. The Court concludes that Plaintiffs have failed to meet their burden of establishing a waiver of the Government's sovereign immunity and have not established subject matter jurisdiction over the Government. *See Cato v. United States*, 70 F.3d 1103, 1107 (9th Cir. 1995) (explaining that it is a plaintiff's burden of showing a waiver of sovereign immunity). Accordingly,

**IT IS ORDERED** granting the Government's "Motion to Dismiss for Lack of Subject Matter Jurisdiction" (Doc. 17).

**IT IS FURTHER ORDERED** dismissing this action without prejudice.

Dated this 20th day of July, 2020.

Honorable Eileen S. Willett
United States Magistrate Judge